IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE: DON FREDERICK SHEFTE, DEBTOR          CASE NO.: 5:21-bk-70177
                                              CHAPTER 7

## MEMORANDUM OPINION AND ORDER

Before the court is an *Objection to Claim of Exemptions* ("Objection") filed by creditor Bruce Lewin ("Lewin") on April 9, 2021, at docket entry 37. The court heard this matter on September 15, 2021. The debtor, Don Frederick Shefte ("debtor"), appeared personally and by and through his counsel. Lewin appeared by and through his counsel. At the conclusion of the hearing, the court took this matter under advisement. For the reasons stated herein, the Objection is overruled, and the debtor's claimed homestead exemption is allowed.

### I. Jurisdiction

This court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). The following opinion and order constitute findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

### II. Facts

The debtor filed a Chapter 7 Voluntary Petition on February 8, 2021. In his schedules, the debtor claims his residence on a 2.5-acre tract of land as an exempt rural homestead pursuant to 11 U.S.C. § 522. In his Objection, Lewin argues that (1) the debtor is not entitled to claim a homestead exemption under Arkansas law because he is not "married or the head of a family" as required in Article 9, Section 3 of the Arkansas Constitution, and (2) the debtor's 2.5-acre tract of land is urban and, thus, exceeds the threshold permitted for an urban residence under Article 9, Section 5 of the Arkansas Constitution. (Objection at ¶ 12, 18.) At the hearing, Lewin's counsel

conceded that the debtor is entitled to a homestead exemption under Arkansas law. Lewin still contends, however, that the debtor's homestead is urban in nature and, therefore, should be limited to one-quarter of an acre, without regard to value, consistent with the Arkansas Constitution.

The debtor's homestead consists of his residence on 2.5 acres of land located at 3741 North Old Wire Road, Fayetteville, Arkansas. Although Fayetteville is the mailing address, the debtor's property is located outside of Fayetteville's corporate limits. The debtor has continuously resided there for twenty-two years and was married during that time. The property is marked by undeveloped woods and a creek running along one edge. (Shefte's Ex. 1.) Additionally, approximately one acre of the debtor's property is within the 100-year floodplain and, according to the debtor, has flooded. The property is flat where the residence is; however, it is "fairly steep" as it slopes down to the Mud Creek floodplain, Mud Creek, and Old Wire Road. (Shefte's Ex. 3.) The debtor requires an easement to access his property from Old Wire Road.

The debtor has never used his property for agricultural purposes. However, the property adjacent to the debtor's land is used for agricultural purposes. Specifically, the debtor's property is bordered on two sides by a farm that raises and sells cattle. This operation consists of anywhere from fifty to seventy-five head of cattle at any given time. Also, near the debtor's residence is a construction business engaged mostly in grading, a wholesale sod farm, and a piano tunning business. The debtor testified that the owner of the later runs the business from his home where he also raises goats.

The property receives water from the city of Fayetteville and electric from Ozark Electric. It has no municipal sewer services but instead depends on a septic tank. Similarly, the debtor uses a private garbage pickup service. Police protection is provided by the Washington County

Sheriff's Department, and fire protection is provided by the Goshen Volunteer Fire Department for an annual fee.[1]

The debtor stated that sitting on his front porch feels like the country. The property has a large front yard, pastoral views and sounds, including birds and cattle, and overlooks large trees, pastures, and a cattle operation. (Shefte's Ex. 5.) Occasionally, cattle will make it through the three-strand barbed wire fence separating the debtor's property from the neighbor's cattle farm and wander into his front yard. (Shefte's Ex. 5.) Photographs introduced into evidence confirm the bucolic nature of the property, including the nearby cattle operation and occasional commensurate intrusion. (Shefte's Ex. 5.)

The debtor testified that his property is in the designated growth and planning area for the city of Fayetteville and permission would likely need to be obtained from both Washington County and the city of Fayetteville if he were to subdivide the property. According to the Washington County Rural Property Record Card for the debtor's property, the property is considered "rural." (Shefte's Ex. 4.) Aerial views of the property can be described as extensively "green" to the east and principally "green" to the west for up to 1.5 miles, or at least until the intrusion of heavily developed areas in the city of Fayetteville. (Creditor's Ex. 3.) The debtor's property is located within one mile of Fayetteville's corporate limits and is considered unincorporated Washington county. The development services director for the city of Fayetteville also testified. He confirmed that the property is outside Fayetteville's corporate limits and possibly outside the extra jurisdictional territory over which cities sometimes exercise limited authority presuming potential and eventual annexation.

---

[1] The city of Goshen is a town located in Washington County, Arkansas.

Lewin argues that the property is urban in nature. In doing so, Lewin relies almost exclusively on the property's proximity to Fayetteville. A private investigator testified that the debtor's property is located one mile from a prominent intersection with many businesses including, banks, restaurants, law offices, an insurance company, medical buildings, a construction company, automotive services, a dental office, a liquor store, a real estate office, and similar businesses. (Creditor's Ex. 2.) More precisely, the debtor's homestead is located 1 mile from a bank, 1.3 miles from the Fayetteville Athletic Club and a gas station, 1.5 miles from a church, 2 miles from a golf course, 2.3 miles from a post office, 2.7 miles from a Walmart Neighborhood Market, 3 miles from a city park and the Northwest Arkansas Mall, and 4 miles from Washington Regional Hospital. (Creditor's Ex. 1). The private investigator acknowledged that the business entities he referenced are located to the west of the property.

### III. Analysis

"Section 522(b)[] of the Bankruptcy Code allows [a d]ebtor to exempt from property of the estate any property exempt under state law as of the date of the bankruptcy petition." *In re Kimball*, 270 B.R. 471, 478 (Bankr. W.D. Ark. 2001). Pursuant to Arkansas Code Annotated § 16-66-217, Arkansas residents can "claim exemptions under 11 U.S.C § 522 of the Bankruptcy Code or the exemptions provided by the constitution and the laws of the State of Arkansas." *In re Kelley*, 455 B.R. 710, 715 (Bankr. E.D. Ark. 2011).

Article 9, Section 3 of the Arkansas Constitution provides:

> [t]he homestead of any resident of this State, who is married or the head of a family, shall not be subject to the lien of any judgment or decree of any court, or to sale under execution, or other process thereon, except such as may be rendered for the purchase money, or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them, and other trustees of an express trust, for moneys due from them in their fiduciary capacity.

ARK. CONST. art. 9, § 3. At the hearing, Lewin's counsel conceded that the debtor is entitled to a homestead exemption under Arkansas law. Thus, the remaining issue for the court to decided is the nature of that homestead exemption—specifically, whether the debtor's homestead is rural or urban.

If rural, the entire 2.5-acre tract of land is protected; if urban, only one-fourth of an acre enjoys the same protection.[2] Article 9, Section 4 of the Arkansas Constitution provides:

> [t]he homestead outside any city, town or village, owned and occupied as a residence, shall consist of not exceeding one hundred and sixty acres of land, with the improvements thereon, to be selected by the owner; [p]rovided, [t]he same shall not exceed in value the sum of twenty-five hundred dollars, and in no event shall the homestead be reduced to less than eighty acres, without regard to value.

ARK. CONST. art. 9, § 4. By electing section 4, the debtor declared his homestead to be rural. Contrary to the debtor's election, Lewin contends that the debtor's real property is urban as defined by Article 9, Section 5 of the Arkansas Constitution which provides:

> [t]he homestead in any city, town or village, owned and occupied as a residence, shall consist of not exceeding one acre of land, with the improvements thereon, to be selected by the owner; provided, the same shall not exceed in value the sum of two thousand five hundred dollars, and in no event shall such homestead be reduced to less than one-quarter of an acre of land, without regard to value.

ARK. CONST. art. 9 § 5. Pursuant to Federal Rule of Bankruptcy Procedure 4003, "the objecting party has the burden of proving that the exemptions are not properly claimed." FED. R. BANKR. P. 4003(c) (2021).

The parties agree that the debtor is entitled to the Arkansas homestead exemption. "The rule is well-established in Arkansas that homestead laws are remedial and should be liberally construed to effectuate the purpose for which they are intended." *In re Oldner*, 191 B.R. 146, 148

---

[2] If urban, the parties reserved for future determination the value, allocation, and apportionment issues.

(Bankr. E.D. Ark. 1995). Thus, "[a]ll presumptions are to be made in favor of the preservation and retention of the homestead." *In re Kelley*, 455 B.R. at 715. Accordingly, having a homestead in Arkansas confers benefits under the law consistent with a legislative philosophy affording protection from creditors who do not enjoy voluntary or improvement liens on the property.

The debtor's property is "outside any city, town or village." Were the inquiry to end here, the debtor would clearly prevail. He is entitled to an Arkansas homestead, and, in isolation, every aspect of the property points to its rural nature; Lewin's proof does not compellingly suggest otherwise. Lewin relies almost exclusively on the property's proximity to the city of Fayetteville. This argument is consistent with authority in both Arkansas state and federal courts that, despite the clear language in the Arkansas Constitution, mere location inside or outside "any city, town or village" is not dispositive. Specifically, courts have found that "[t]he question of whether a homestead is urban property is not 'altogether controlled by the corporate limits,' thus property located within the corporate limits of a town may still be determined rural and property outside the corporate limits may be determined urban." *In re Weaver*, 128 B.R. 224, 227 (Bankr. W.D. Ark. 1991). "The use made of the property is 'very much pertinent' to the determination of the rural or urban character of a debtor's homestead." *Id*. For example, "[u]se of the property for exclusively agricultural purposes generally indicates a rural homestead; however, property used for another purpose may still be determined rural." *Id*. Further, "[c]ourts have focused on the characteristics of the property and surrounding area in determining whether the homestead should be considered rural or urban." *In re Evans*, 190 B.R. 1015, 1022 (Bankr. E.D. Ark. 1995). Consequently, the court's ultimate decision "must be determined based on the facts of each case and must be considered in light of the intent of the constitutional provisions allowing the exemption." *Oldner*, 191 B.R. at 149.

Several courts have considered whether a debtor's Arkansas homestead exemption qualifies as urban or rural. In *Weaver*, the court analyzed whether a 10-acre plot of land comprising two lots was rural or urban. *Weaver*, 128 B.R. at 225. The debtor's property was located within a subdivision known as Wofford Estates; however, the nearest stores and banks were fifteen to twenty miles from the property. *Id.* at 228. Additionally, the road leading to the property was not designated as a county road; no city tax was assessed; only electrical service was provided to the property; the property used private septic tanks; it had "no local government or police protection" and was "serviced by a volunteer fire department." *Id.* The property neighboring the debtor's property was owned by a man operating a beef cattle business. *Id*. The area also lacked a "school, church, drugstore, barber shop, industry, motel, or service station." *Id.* Based on those facts, the court found that the debtor's property was rural as it "d[id] not possess the requisite urban characteristics of a city, town, or village. The only characteristic which could be construed as urban is that the property is divided into a subdivision[.]" *Id.*

In *Oldner*, the court decided that "9.7 acres of land located in Saline County, Arkansas" was urban rather than a "rural homestead." *Oldner*, 191 B.R. at 147.

> The facts in this case support a finding that the debtor's homestead is urban in nature. The Court observed from viewing the area in which the debtor's property is located that the property is located in a megalopolitan area that has developed in recent years on either side of Interstate 30 from Little Rock, Arkansas, on the north and Benton, Arkansas, on the south. Bryant, Arkansas, is located in between Little Rock and Benton. While traveling on Interstate 30 between Little Rock and Benton it is not easy to discern when you leave one municipal corporate limit and enter another. Land uses range from single family residences to commercial and industrial uses. Only a relatively small percentage of the land in the immediate area is still devoted to agricultural activity.
>
> The property has access to the common attributes and conveniences of a town or city. Although many of the town or city conveniences such as grocery stores, banks, retail stores, and service stations are located one to five miles from the debtor's property, the road and highway systems in the area are substantially developed and access to these conveniences are readily available by automobile in

7

> a matter of a few minutes. The residents in the area in which the debtor's property is located enjoy the same conveniences as residents of the nearby cities enjoy and the residents are engaged in pursuits related to and carried on in the cities. All these characteristics taken together clearly support a finding that the debtor's property is urban in nature.

*Id.* at 149–50.

Similarly, the court in *Evans* found the debtors' "2.8 acre tract of land located on Grider Field Ladd Road in Jefferson County, Arkansas" to be urban in nature. *Evans*, 190 B.R. at 1017.

> In this case, the facts support a finding that the debtors' homestead is urban in nature. The debtors' property . . ., although not technically within the city limits of Pine Bluff, is only six to eight feet away. The debtors' property enjoys all the modern conveniences that are enjoyed by the residents of the city of Pine Bluff. For example, electricity and phone services are provided by the same suppliers that service Pine Bluff residents. Emergency services, including fire, police, and ambulance services, are provided to the property through the 911 Emergency Service System in Pine Bluff, Arkansas. In addition, although the debtors use the services of a Ladd Water Association, city water is available at the road adjoining the property. Retail services [including the Pines Mall] such as gas stations and a grocery store are available approximately one mile from the homestead.
>
> The bus manufacturing business located on the debtors' property is consistent with other uses of the property in close proximity to the debtors' residence. The surrounding area contains many commercial and industrial businesses, which is not characteristic of a rural area, but more characteristic of an urban area.

*Id.* at 1023–24. Echoing the analysis in *Oldner*, the court in *Chambers* found that the debtor's "property has immediate access to all of the common attributes and conveniences of an urban area. The distance to all of the urban amenities available in Nashville, Arkansas, are either adjacent to the property or accessible by a vehicle in less than ten minutes." *In re Chambers*, 2003 WL 21397757 at *4 (Bankr. W.D. Ark. Apr. 10, 2003).

In *Kelley*, the court analyzed whether the trustee "satisf[ied his] burden of proving that debtor's homestead property was 'urban' in character." *Kelley*, 455 B.R. 710. The debtor resided on eight acres in Lexa, Arkansas, and exempted his homestead as rural property pursuant to Article

8

9, Section 4 of the Arkansas Constitution. *Id.* at 712. In sifting through the facts, the court noted that the "evidence [wa]s evenly balanced with no preponderance in favor of either [the trustee or the debtor]." *Id.* at 717.

> The property in question has characteristics of both an urban and rural homestead. Factors suggesting urban include the property's proximity to the town of Helena–West Helena; the availability of all urban amenities of Helena–West Helena; the Debtor's property corners on the city limits of Helena–West Helena; the residence is provided some city services such as water, fire protection, garbage pickup; the property has telephone service and the electric service is provided by Entergy and not a rural co-op; the property is located on a paved road []; the property is not devoted to agricultural use; and the surrounding area consists of houses on either side of the highway beginning north of the Debtor's property south toward Plaza Street.
>
> Factors which suggest rural include the size of the Debtor's yard; its location outside the city limits of Helena–West Helena; the fact that in the near vicinity of the Debtor's property the city limits form a strip along the highway and the houses are usually on a large tract fronting the highway while the use to the west behind the houses is devoted to agricultural uses; the land to the east in front of the Debtor's property is not conducive to agricultural uses because it is within a ridge area; the Debtor has some animals and a barn located on the property; the property is not served by city sewer; the post office serving the residences is located in Lexa, Arkansas, a tiny community four miles west and north of the subject property; along Fourth Street Road traveling east toward Plaza Street there are a number of vacant parcels; the population of Helena–West Helena declined from 15,000 residents to 12,000 residents in 2010; the property is taxed as rural property; and law enforcement is provided by the county sheriff's office and not city police.
>
> After considering the factors listed above and the impression gained from a view of the residence and surrounding areas, the evidence is evenly balanced with no preponderance in favor of either party. Therefore, the Trustee's objection must be overruled because he is the party who carries the burden of proof and with the evidence evenly persuasive he has not sustained his burden of proof. The objection to the Debtor's homestead as being urban is overruled and the homestead is determined to be rural.

*Id.* at 716–17.

The facts in this case, the presumptions in favor of the homestead, and the allocation of the burden of proof on the objecting party collectively compel the conclusion that the debtor's property is rural in nature for purposes of the homestead exemption. Based on the proof at the hearing,

9

which was not effectively disputed by Lewin, the property, taken in isolation, is unquestionably rural. It is a 2.5-acre wooded tract of land in a pastoral environment of which significant parts are undeveloped, timbered, steep in places, lying within a floodplain, and bordered by a creek and farm animals. It has no direct access to a road and must depend upon an easement. It is surrounded by properties used for agricultural or farm purposes, including a sod farm and properties used for raising cattle and goats. It relies on a septic tank, private trash service, the county for police protection, and a fee paid volunteer fire department. There is literally no proof that the property or its immediate contiguous areas are anything other than rural.

The only facts tending to diminish or temper this conclusion relate to the proximity of the amenities available in the city of Fayetteville. The weight, however, of this evidence must be equally tempered by the fact that the closest cited amenity, a bank, is at least a mile away, and most amenities are in the two mile range from the property. (Shefte's Exs. 1, 3.) Additionally, the overhead view reflects that that the 1 to 1.5-mile range west of the property shares the same heavily wooded and rural nature of the vast rural expanse to the east of the property. (Creditor's Ex. 3). While proximity to amenities is a factor, it is not the sole and exclusive determining factor, especially when no other factors or evidence in the aggregate support the conclusion that the property should be defined as urban rather than rural.

Unlike *Oldner* and *Evans*, the debtor in this case does not live immediately adjacent to a city or in a highly developed area as part of a megalopolitan expanse. Rather, he lives in an area characterized by a large expanse of rural property to the east and west with only the intrusion of the city anywhere from a mile to two miles to his west. All the contiguous and nearby properties relate to traditional rural activities. Nothing more than the intrusion of the city a mile to his west suggests that this property or its contiguous areas are anything other than rural. To hold that solely

these amenities—in isolation from all other factors—are dispositive would be a determination that the penumbra of every city, town, or village in Arkansas is per se urban. Such a finding is contrary to the presumptions in favor of the homestead and the appropriate inclusion and consideration of other factors in determining the nature of the property in question. This court's conclusion is more consistent with that of *Kelley* but with the proviso that its determination, while based on the burden of proof, is less dictated by that burden given the lack of any evidence diminishing the rural nature of the property other than its proximity to a city.

### IV. Conclusion

For the reasons stated above, Lewin's Objection is overruled, and the debtor's claimed homestead exemption is allowed.

IT IS SO ORDERED.

Dated this 7th day of October, 2021.

_____
HONORABLE RICHARD D. TAYLOR
UNITED STATES BANKRUPTCY JUDGE

cc: Don Frederick Shefte
     Stanley V. Bond
     J. Brian Ferguson
     Hamilton Moses Mitchell